Sandoval-Gutierrez. Thank you. May it please the Court, Counsel for the Government, my name is Elizabeth Daltrim with the Federal Defenders of Eastern Washington and Idaho. I'm here representing the appellant, Mr. Sandoval-Gutierrez. I'm having trouble hearing you. You're talking too fast and not loud enough. Excuse me. It's sort of an echo. Thank you. Thank you. I would like to reserve one minute for rebuttal. Mr. Sandoval-Gutierrez has brought this appeal alleging three main areas of error. The first is that the district court erred when it found that fourth-degree assault under Washington law is categorically a crime of violence. Now, because this statute is not punishable by more than one year in prison, we are dealing only with the definition found at Section 16A. I guess there what you've got is they've got a Washington case that says spitting on somebody is enough for fourth-degree assault because it's disrespectful, and you've got Bellis that says if it's not violent, it's not a crime of violence for the Federal purpose. That's correct, Your Honor. Our main point is that the fourth-degree assault statute in Washington punishes unprivileged touching where no harm results, although the contact may be offensive. And as this Court pointed out in Bellis, the definition of physical force is force necessary to be violent in nature. And under a fourth-degree assault statute, there doesn't need to actually involve any violence. The district court in this case relied on Saron Sanchez, which we believe was error because the statute involved in Saron Sanchez was actually an aggravated assault statute and had incorporated by reference a provision that required the use of a deadly weapon. And that alters the nature of the offense of touching in that case because the assault was accomplished with a deadly weapon. Well, now you're going, this is under the straight categorical approach, right? That's correct. Now, under the modified categorical approach, what exactly, I know that there are some, you're both going to look at the record a little bit differently here, but what exactly was in the broadest sense before the district court in the record if you were to look to a modified categorical report? Because both the prior convictions he admitted, correct? That's correct. And was there a state court probation report? I don't believe so. I believe the documents that were in the record before the district court included the charging document, the guilty plea statement wherein Mr. Sandoval Gutierrez admitted on October 3, 2001, I assaulted the victim without any further details. The judgment was also in the record. And the government has argued that in the finding section of the judgment, the court references the probable cause statement. And we submit that that, just because that's referenced in the judgment, doesn't mean that it is part of the court record and part of the judicially noticeable documents. There is no finding by the district court that they relied on the facts as stated in the probable cause statement, Mr. Sandoval Gutierrez. But the district court did see the probable cause statement, correct? That's correct. All right. Well, just for argument's sake at this point, if that were admissible, those facts aren't good for your client, correct? They're not good for the client, but I think the real issue is whether there was a finding and a conviction as to which of the three prongs of the assault statute he was found guilty of. The facts in the record are evidence of his conduct, which even under the modified approach the court cannot consider. Is there any significance to the fact that when he was in the state court and those facts were part of the probable cause, he didn't object there, correct? I know this is a lot of piggybacking, but I'm just trying to figure out everyone's argument from the standpoint of, you know, the best case, the worst case scenario from your standpoint, the prosecutor's standpoint as far as if those statements, the probable cause statement, he didn't object at the state court, then they're referenced in the federal district court, correct? The reference in the state court judgment, it merely says in the findings section, guilty of fourth degree assault under the fourth degree assault statute, and then it says Yakima County Incident Number X, and that is a reference to the probable cause statement where the statute is. What specifically does the probable cause statement say? It indicates that Mr. Sandoval-Gutierrez, the factual allegations behind his conviction involved contact with the victim, offensive touching, essentially. And if those were admissible, they sounded quiet. Correct. But we... So your argument really is more that they're not admissible by virtue of... Correct. Because, but even if they were admissible, though, the court can't look at them as evidence of factual conduct. It's more whether he was found guilty or not guilty. Okay. Well, let's look at how these things are done in Washington. I'm looking at the judgment here, the superior court. It says non-felony judgment and sentence, and then fourth degree assault, domestic violence, law enforcement incident number Yakima S.O. 0117017. That's it. I don't see any indication that anything is stapled to it. Now, I've got this probable cause statement that's about 20 pages later in the excerpt that says exactly what he was accused of doing. Was it stapled to the judgment in the Washington records, or is it attached in some way so that anyone who sees the judgment sees that that's the probable cause statement? I don't believe that it was stapled to the judgment. Even so, our question is, is that whether that may be simply a way of referencing the incident number in this case. Unlike this Court's decision in Hernandez-Hernandez, which was recently decided, my client did not stipulate during his change of plea hearing to the use of these facts as the factual basis for his plea colloquy. But he didn't object in the State court. No, I don't know that the probable cause statement came up at the time of the guilty plea hearing, necessarily. It was I'm wondering what it's used for except to arrest him. What it looks like when I'm reading it, it looks like it's the policeman writing down the results of his interview with the victim. I believe that's correct. It came in part of the initial charging documents. And what is it used for? Is it used to get an arrest warrant, or is it used to put together, to give to the assistant D.A. so that the assistant D.A. can write a complaint or an indictment or what? I believe so. I believe it comes in merely as a factual basis for the allegations in the very beginning of a case. In this case, as I said, he did not stipulate to this as a factual basis. He did provide his own statement in his guilty plea colloquy where he admitted, or in his statement where he admitted to assault. Is it just in his guilty plea, it just says I assaulted Joseph Eden C. Sandoval. That doesn't say that he did all these things that she says he did in the probable cause statement. That's correct. Is there something in this record that indicates that the probable cause statement gets read to him and he says, yes, that's true? I don't believe so. I don't believe so. I'd like to move on to the second error that we have alleged, which is that the district court failed to give effect to the defendant's non-pro-tunk order. Prior to his Federal sentencing, the State court judge amended his sentence to a term of less than 365 days. The district court found that that could not be relied upon in using it for his Federal sentencing. And we assert that that was error because this provision of the Federal sentencing guidelines is one of the ones that relies on the sentence actually announced. The government submitted supplemental briefing on a case that's closest to this, the Martinez-Cortez case from the Eighth Circuit. Now, in that analysis, the court doesn't cite any authority for why it should disregard a non-pro-tunk judgment other than the statement in the guidelines under 4A1.2J that only expunged convictions count. The dissent did a more thorough analysis, an S analysis that we agree with, which is that the structure of the Federal sentencing guidelines says that the court looks at the sentence actually announced. And it is not the guidelines are concerned with the State court's final determination not the soundness of its reasoning. We submit that that is the correct analysis to engage in. Also, the court erred when it added two additional criminal history points for a partially suspended misdemeanor sentence and a totally suspended misdemeanor sentence relying on this Court's decision in Williams. This Court has since then limited Williams to totally suspended sentences. We'd like this Court to revisit that issue because as it stands now, only people who have sentences that are completely suspended are accruing criminal history points under 4A1.1C. When you say revisit that point, are you asking us to go at bank? Pardon me? When you say you want us to revisit that issue, are you asking us to go at bank? No, not necessarily, because — How can we distinguish those two? Because I believe that the Williams analysis was incomplete. It stopped merely at the provision, the guidelines that says that a suspended sentence is a prior sentence. We don't disagree that a suspended sentence is a prior sentence. That's not the end of the analysis. You have to — the question is whether it's ultimately countable or not. But Hernandez, Hernandez points out that there is a strange difference between its decision and the decision in Williams. That's correct. That's correct. And we submit that now under the statement of the law as it is now, persons who serve up to 29 days in jail will have their convictions excluded, persons who had partially suspended sentences of less than 29 days in jail will have their sentences excluded, and only the people who served actually no jail time will have their convictions counted. And we submit that the Court in Williams failed to acknowledge that the sentencing guidelines say that a sentence, in order for something to be a sentence of imprisonment, the defendant has to have actually served a period of incarceration. I'm confused. I thought all you were telling us was follow Williams on the totally suspended sentence and give him the point, and follow Hernandez, Hernandez on the partially suspended sentence and don't give him the point. No, Your Honor. Our argument is that Williams, the analysis in Williams is incomplete. You're saying don't follow Williams, don't give him either of the two points? That's correct. I see. My time has ended. Thank you, counsel. May it please the Court, counsel. My name is Jane Kirk, and I'm appearing on behalf of the government. On the issue of Taylor and what we look at in the record, it is all over the board, I believe, with the Ninth Circuit. I don't think it's ever gone this far off the board, has it? Do we have any case that says we can use a police report that is submitted to show probable cause for, actually, it doesn't say what it's supposed to be probable cause for. Is it probable cause for arrest or for complaint or what? I believe for arrest. For arrest? Yes. Is there any case that says that under the modified categorical approach, you can use a police report that was used to furnish probable cause for arrest? No, Your Honor. There is no case that says that. However, in this case, we also have the judgment that refers to the police report. Well, I'm looking at the judgment, and I don't see a reference to the police report. All I see, the closest that I come to it, is it says, Law Enforcement Incident Number Yakima S.O. 0117017. Is there other language that I've overlooked there? No, you have not, Your Honor. That doesn't tell me judgment in accord with the narrative and the statement of probable cause or anything of the sort. All it gives me is a file number. Correct, Your Honor. And then also there is the information that says that he is charged with fourth-degree assault on count one, and that's what he pleads guilty to. Let's see. The information is? Page 21 of the supplemental excerpts of record. Yeah, I've got it. And it doesn't look like that has any incorporation of the allegations in the police report here. It just says, On or about October 4, 2001, you intentionally assaulted another Josephine Sandoval. Is there more that I'm overlooking? That would be count two, Your Honor. Count one is on or about October 3rd. Okay, there it says you intentionally assaulted another Josephine C. Sandoval. Correct. You committed this crime against a family or household member. Is there more? There is not any more, Your Honor. It looks like just straight bellous to me. It looks like for all we can tell from the material that we're allowed to look at, he spit on her. Your Honor, I respectfully disagree that I believe you can also look at the PSR. I know you cannot look solely to the PSR. Is there a case that says that we can accept the PSR statement of what the conduct was for purposes of the modified categorical approach? There is not a case that says that exactly. The cases do, when they talk about the PSR, they say that you cannot rely solely on it. And I think when you put it all together, you cannot rely solely on the PSR. Just a minute. How do we put it together? I mean, you know, police report, policeman interviews victim. Victim says what the man did. There isn't any occasion for him to do anything about that because its purpose is completed once an arrest warrant is issued. Your Honor, and then the fact is he pleads to the information that charges him with assaulting that woman on that day. True, but the information that he pleads to doesn't say he did all these disgusting things with her. It just says that he assaulted her. And for all I can tell, under Washington fourth-degree assault law, that means he hollered at her and spit at her. Well, there are two issues I'd like to address on that, the spitting, and I want to get back to that. But also, I think this Court can look to the PSR. In this case, it's uncontested. This PSR information is sent to both parties once probation prepares it. And then if there's any objection to it, you're under an obligation to correct this, to correct any misstatements in the PSR. I remember the Supreme Court in Taylor, they know about PSRs, and they didn't mention we could look at PSRs. Is that right? No, that is correct, Your Honor. So this would be en banc for sure if we gave you the new precedent that you want. It would be en banc, Your Honor. Or we could just wait for the Supreme Court, because they have granted certiorari in a case that will deal precisely with this issue, I believe. Oh, really? Yes. Oh, what's the name of it? That is U.S. v. Shepard. I only have the case below cite. S-H-E-P? A-R-D. A-R-D. And that will tell us whether you can use PSRs under the modified categorical approach. It's 348, Fed 3rd, 308. And in that case, the First Circuit relied on police reports, permitted the district court to rely on police reports. And the Supreme Court has granted certiorari in the case, Mr. Shepard's request. So you might be before your time. Exactly. Or we'll find out who is ahead of the curve here. As to the spitting issue, Your Honor, I think if you look at it, in Washington, under Washington cases, the spitting all occurs when it's a police officer. It's not just one citizen spitting on another citizen. The Humphreys case, it was spitting on a police officer, and the case it relied on was ---- I think that makes it third degree instead of fourth degree. But as far as the element of some physical force, police officer not as irrelevant. The only thing police officer matters to is it raises it to a higher degree. Is that right? That's my recollection. Yeah. That's right at the time of Humphreys. However, the fourth degree assault statute has been changed. Under Humphreys, it was just simple assault. Currently, the fourth degree assault is in Washington, also has words in it that says that it's assault amounting ---- it's in circumstances not amounting to assault in the first, second, third degree, or custodial. So that language has been added, and that's different from Humphreys. Does it matter? Does the difference matter? I think it does, Your Honor, because I don't think that you can find a spitting case where a police officer is not involved. And then if spitting is out of it, then we have the touching. And Bellis examined 921. Your Honor examined that and whether it was a ---- you used violent felony, and you looked at the language in the statute, and the statute was connected to use of a dangerous weapon. I think the statute there included a broad range of touchings down to rude or insolent touching. And what we said was, well, the touching can be rude or insolent without being violent. Without being violent under that statute. When you're telling them how wrong it is. Yes, Your Honor. Like Nixon did with Khrushchev. Right. But if you also look at the language, it's under the circumstances, would a reasonable person. So would Khrushchev or Nixon have found that offensive? As in a footnote you noted, afterwards they all thought it was good fun. But, and the Bellis court distinguished Nason, the First Circuit case, where, and that, the language under Nason is very similar to Washington's. It's the same. We're bound by Ninth Circuit. Pardon? We're bound by Ninth Circuit law. Right. And by Ninth Circuit law, though, Bellis referred to Nason and distinguished Nason. So I don't think that we can ignore Nason. And Nason said that just a mere touch is not a violent felony. However, if it's a touch that would be offensive to a reasonable person. And I also believe that. Well, what we said was that the First Circuit case, the main statute construed in that had been narrowed by case law to require more than a mere touching of another. Correct. And then if you look at, if you go to Nason and look exactly what they were looking at, the way it was narrowed, it said that it requires more than mere touching of another. And basically that's a question of was the conduct under the circumstances such that a reasonable person would find it to be offensive. That's the language under Washington State, too. Would touching is offensive if the touching would be, would offend an ordinary person. No, if you go that far, just, if what you're saying is that our distinction was invalid of the First Circuit case? No, I'm saying it was valid, but it was valid as to that statute where the analysis was done under. It was not done under, the analysis referred under 921, whether it was a violent felony under 921. I'd like to hear what you have to say about Williams and Hernandez. I think Hernandez-Hernandez takes care of the issue that I would ask the Court to affirm Williams to the point that if the sentence is totally suspended, but in this case where it was a partially suspended sentence, then that would need to be excluded from the criminal history under Hernandez-Hernandez. I find that difference is rather odd. I find it very odd, Your Honor. Thank you very much. Thank you, Counsel. Sandoval-Gutierrez is submitted. United States v. Sandoval is submitted. United States v. Sandoval-Lopez is submitted. Howerton v. Carter is submitted. Baker v. Stealth Airlines is submitted. We're adjourned until 9 p.m.
judges: Hall, Kleinfeld, Callahan